GOODLOVE *v.* HAMBURGER.

1. COVENANTS—BUILDING RESTRICTIONS—ABANDONMENT.
   In a subdivision on which there were building restrictions,. the change of the location of an alley and a readjustment of the affected lots without any other alteration, *held,* not to amount to an abandonment of the building restrictions.

2. SAME—MERCANTILE BUILDINGS—SERVICE STATIONS.
   A gasoline and oil service station is within the permissive restriction allowing the erection of "mercantile buildings" on a subdivision.

3. SAME—BUILDING RESTRICTIONS—HEIGHT OF BUILDING.
   In a suit by property owners to enjoin the violation of building restrictions on a subdivision, where said restrictions limit the erection of "mercantile buildings" to not less than two stories in height, the fact that defendants' proposed service station, as planned, would look better one-story than two-stories high, *held,* not to entitle them to violate said restrictions against plaintiffs' appeal to the courts for their enforcement.

Appeal from Wayne; Mandell (Henry A.), J. Submitted February 3, 1922. (Docket No. 182.) Decided March 30, 1922.

Bill by William F. Goodlove and others against Charles Hamburger and others to enjoin the violation of certain building restrictions. From the decree rendered, plaintiffs appeal. Modified and affirmed.

*Welsh, Bebout & Kahn,* for plaintiffs.

*Clark, Emmons, Bryant, Klein & Brown,* for defendants.

STEERE, J.    Plaintiffs, who are property owners and

residents on Ivanhoe avenue in the Tireman subdivision of the city of Detroit, filed this bill to restrain construction by defendants of a one-story gasoline filling station which they had started on a site in said subdivision located at the southwest intersection, or corner, of Ivanhoe and Grand River avenues. The Tireman subdivision lies adjacent to and extends westerly from Grand River avenue, which runs from the central portion of the city in a northwesterly direction. An alley parallel to it runs through the subdivision a short distance west with lots between the alley and Grand River avenue fronting on the latter, while to the west of the alley lots in the subdivision front on avenues running directly east and west connecting with Grand River avenue at an angle. The names of two of these avenues were subsequently changed from Thornton and Tireman to Spokane and Ivanhoe.

On June 27, 1913, Joseph Tireman and wife, who owned and platted the subdivision, executed and on July 5th recorded in the office of the register of deeds of Wayne county a declaration of building restrictions thereon providing, so far as material here, as follows:

"All lots in the subdivision are to be used for residence purposes only except lots fronting on Grand River avenue on which solid brick mercantile buildings or residences or a combination of both may be erected at a cost of not less than three thousand (3,000) dollars and not less than two stories in height. * * *

"For the entire frontage on Thornton (Spokane) avenue and Tireman place (Ivanhoe avenue) from alley parallel to and westerly of Grand River avenue to the westerly line of the subdivision, no building shall be built, erected or maintained nearer than 30 feet to the front or street line of said premises. * * * No buildings for mercantile or residence purposes shall be erected nearer than twenty feet to the street line of Maplewood avenue, Thornton (Spokane) avenue or Tireman place (Ivanhoe avenue). * * * Thorn-

ton (Spokane) avenue and Tireman place (Ivanhoe avenue), between Grand River and Beechwood avenues, single residence only, not less than two (2) stories high, costing not less than three thousand (3,000) dollars."

The fact that it was planned to be a strictly residential district with rigid building restrictions was advertised and emphasized as an inducement to purchase. A prospectus used in the sale of lots describing the subdivision in attractive terms pointed out that those restrictions, which would result in freedom from "all objectionable city features," had been put of record, calling attention to a complete copy of the restrictions on the opposite page of the prospectus.

When this suit was commenced the great majority of lots on Ivanhoe and Spokane avenues were occupied with costly residences on both sides, with but a few double houses or family flats in the second and third blocks to the west of Grand River avenue where they were permitted under the restrictions. In the first block next to Grand River avenue only single, two-story dwellings were built on the lots facing those streets. On Ivanhoe avenue there were in the first block approximately 42 expensive residences of an average value of $25,000 or $30,000 and running up to $75,000. It was shown to be a particularly desirable residence district and Ivanhoe was said to be "the best street out Grand River from the Boulevard north as far as you want to go. * * * the most highly restricted street, the most valuable street." The trial judge after viewing the premises found "the streets in this subdivision, as well as others in the immediate vicinity, of a high class residence character," and that Grand River avenue was a busy thoroughfare, "fast becoming a business street."

On August 25, 1919, Mrs. Tireman (whose husband had died) sold to George W. Rudell on contract certain descriptions in this subdivision, amongst which

were lots on block one facing Grand River avenue, including the site in question, which is a corner lot fronting 50 feet on Grand River avenue and extending westerly that width to the alley with Ivanhoe avenue as a side street on its north.   This contract provided:

"The above mentioned premises are conveyed subject to building restrictions recorded in the register's office, Wayne county, Michigan, in liber 914, page 304 of deeds, with the exception that each dwelling erected is to be constructed of solid brick, brick veneer, or stucco, with slate or tile roof and to cost not less than five thousand ($5,000.00) dollars."

On September 10, 1920, Rudell, with the consent of Mrs. Tireman, sold and assigned all his remaining interest in this contract, which yet included the site in question, to defendants Hamburger who on their part obligated themselves over their signatures as follows:

"And the said Max Hamburger and Charles Hamburger, in consideration of the premises hereby assume and agree to carry out all parts of said contract (not already performed), provided in said contract to be performed by the party of the second part thereto."

Early in 1921 (exact date is left blank in printed record) the Hamburgers entered into a land contract with the defendant Standard Oil Company to sell it this site for $24,000 with a payment of $500 down, the latter agreeing as soon as construction could be commenced in the spring to break ground and erect as rapidly as possible a described brick filling station on the premises, and, if all went well in the matter of restrictions, to complete the purchase of said real estate on or before August 1, 1921.   The contract is abundant in details, but the following excerpt from its recitals indicates the nature of the project:

"It is understood and agreed that the party of the second part desires to purchase the above described land for the purpose of erecting and conducting a one

story oil and gasoline filling station for the supply of automobiles and other gasoline driven vehicles, and desires to erect and operate on said land said one story station together with the usual and necessary driveways, and whereas the said real estate is subject to a building restriction providing that lots fronting on Grand River avenue shall be improved by a solid brick mercantile building of two stories in height and cost not less than three thousand dollars ($3,000) and that no building shall be built nearer than twenty (20) feet to the line of said Ivanhoe avenue, and that the parties of the second part are of the opinion that said premises can be used by the party of the second part for the erection and operation of such a gasoline filling station and to give the party of the second part an opportunity to test said question, it is hereby agreed as follows:"    *    *    *

Plaintiffs apparently did not realize any too soon that in some sections eternal vigilance is the price of a building restriction as defendants make the point that the side walls of the filling station were up half way or more when this suit was begun, although the bill was filed and summons issued March 31, 1921. The trial court in its decree refused to enjoin erection of the proposed building, but restricted its extension beyond 20 feet from the curb line of Ivanhoe avenue, including the so-called "canopy," or portico formed by its projecting roof supported on corner piers.

From this plaintiffs appeal, claiming the erection of such structure would be a violation of the building restrictions on that portion of the subdivision in the particulars that the proposed gasoline filling station is not a "mercantile building," is not to be two stories in height, nor to front on Grand River avenue, the canopy or open extension of the roof is an integral part of the building and cannot be separated from it, the oil pumps at the edge of the canopy will be a part of the fixtures of the building, and the proposed cement driveway passing under and outside the canopy covering approximately ¾ of the 20 feet restricted area is

to be so constructed in connection with the building as to be a permanent part and parcel of it for all intents and purposes.

The defendants contend that the restrictions have become inoperative upon this site by reason of a re-subdivision of the tract in 1914; that plaintiffs have violated the restrictions by building within less than 30 feet of the building line on Ivanhoe and Spokane avenues; that the construction of a one-story building instead of a two-story would not injure plaintiffs, but as contemplated would make that corner more attractive; that the proposed building is strictly within the requirements of the restrictions to a "mercantile building" and to be used for legitimate mercantile purposes only, and the concrete driveway objected to is not prohibited by the restrictions but will leave the property much cleaner and more attractive than in its natural condition.

No claim is or can be made that defendants did not have full notice of all restrictions upon this property and all existing conditions in and near that subdivision. Defendants' claim of an abandonment of the restrictions is based on a change of the alley from where first located a short distance further east and nearer Grand River avenue, and a re-adjustment of the affected lots without any other alteration of alleys, streets or lots as previously platted or change in the recorded restrictions placed upon the subdivision. Furthermore, in 1919, when Mrs. Tireman, who lived upon Ivanhoe avenue and was familiar with then existing conditions, sold this property to Rudell she took the precaution to reimpose in the contract the restrictions upon the property sold him, and when he assigned the contract to defendants Hamburger they agreed in writing to carry out all parts of that contract which were to be performed by Rudell. We have no hesitation in concluding that the site in ques-

tion is subject to the restrictions of record and that this issue should be tested by the legal rights of the parties under them.

Gasoline and oil are well known commodities bought and sold in the usual course of business at wholesale and retail, either exclusively or in connection with other merchandizing. The trial court rightly held that the owner is not prohibited by the restrictions from erecting upon these premises a solid brick mercantile building for that purpose and there engaging in such business. The restrictions, however, in regard to such buildings located upon lots fronting Grand River avenue provide that they "may be erected at a cost of not less than $3,000 and not less than two stories in height." Defendants' contention that the building as planned will look better one story than two stories high does not entitle them to violate that restriction against plaintiffs' appeal to the courts for its enforcement. We find nothing in the restrictions prohibiting cement driveways on the property whereever the owner thinks best. Restriction as to a 20-foot street line on Ivanhoe avenue is in effect reiterated in Mrs. Tireman's contract of sale assigned to defendants Hamburger. No portion of this building or its appurtenances can be extended beyond the prescribed 20-foot building line on that avenue.

This court has so often and recently been called upon to review the authorities on the subject of building restrictions that it would be superfluous to discuss them here. The decree of the lower court will be modified to restrain defendants from erecting upon said site other than a two-story building as specified in the restrictions, and, so modified, will stand affirmed, without costs to either party in this court.

FELLOWS, C. J., and WIEST, CLARK, SHARPE, and MOORE, JJ., concurred. BIRD, J., did not sit.

The late Justice STONE took no part in this decision.